FILED
2017 OCT 10 PM 2: 54

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OMAR OROZCO,
individually and on behalf of all
others similarly situated,

Case No.: 6:17-CV-1751-ORL-31-KRS

Plaintiff,

CLASS REPRESENTATION

v.

HIBBETT SPORTING GOODS, INC.,
a foreign for-profit corporation,

Defendant.
_____/

## CLASS ACTION COMPLAINT

**COMES NOW**, Plaintiff OMAR OROZCO (hereinafter, "Plaintiff"), by and through the undersigned counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and others similarly situated (hereinafter, "Class Members"), and hereby sues Defendant, HIBBETT SPORTING GOODS, INC. (hereinafter, "Defendant"). In support thereof, Plaintiff states:

### INTRODUCTION & PRELIMINARY STATEMENT

1. This is a class action brought pursuant to Rule 23, Federal Rules of Civil Procedure, against Defendant for its routine and systematic violations of the Telephone Consumer Protection Act, 47 United States Code, Section 227 *et seq.* (hereinafter, "TCPA") and the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Florida Statutes (hereinafter, "FDUTPA"). Plaintiff brings this case on behalf of himself individually and on behalf of Class Members, as hereinafter defined, of all others similarly situated.

2. Specifically, Defendant routinely and systematically violates the TCPA with its marketing and advertising campaigns by sending text messages to Class Members' cellular telephones using an automatic telephone dialing system and equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and by dialing such numbers. As described more fully below, Defendant has made, and is continuing to make, a high volume of illegal calls through its text message marketing and advertising campaign.

3. Further, Defendant practices its text message marketing and advertising campaign without the appropriate consent of the consumers it calls in dereliction of the TCPA, is an unfair or deceptive trade practice that violates FDUTPA, Section 501.204(1).

## JURISDICTION, VENUE & PARTIES

4. Plaintiff is a resident of Orange County, Florida.

5. Defendant is a foreign for-profit corporation existing under the laws of the state of Alabama with is principal place of business located at 2700 Milan Court, Birmingham, AL 35211. Defendant regularly conducts business in the state of Florida and also within this Judicial District.

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter, "CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each Class Member— estimated to be in the thousands or tens of thousands—is entitled to up to $1,500.00 in statutory damages for each call or text initiated or placed in violation of the TCPA.

7. This Court has federal question jurisdiction pursuant to 28 United States Code, Section 1331 and 47 United States Code, Section 227 *et seq*. Supplemental jurisdiction exists for the FDUTPA claims pursuant to 28 United States Code, Section 1367.

8. This Court has personal jurisdiction over Defendant because the conduct at issue in this case has occurred, among other locations throughout many cities and counties throughout the state of Florida. Further, Defendant is licensed to and does conduct business in the state of Florida. Defendant has therefore established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Florida.

9. Venue is proper in the United States District Court for the Middle District of Florida because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction. *See* 28 U.S.C. § 1391.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 UNITED STATES CODE, SECTION 227

10. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11. The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers."

12. The plain language of section 227(a)(1) defines an auto-dialer as equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

13. Further, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of auto-dialers to make any calls to a wireless number in the absence of an emergency or the prior express consent of the called party.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).

14. According to the findings by the Federal Communications Commission (hereinafter, the "FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly, inconvenient and an invasion of the called party's privacy.

15. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

17. Further, on February 15, 2012, the FCC released a declaratory ruling advising that, effective October 16, 2013 ("FCC 2012 Order"), if a telemarketing call was initiated or made using an automatic telephone dialing system to a cellular telephone service, it could only be lawfully done if the caller had or obtained the called party's prior express *written* consent.[4]

18. The FCC 2012 Order defined "prior express *written* consent" as consent that:

    a.    was in writing, bearing the signature of the person providing consent;

    b.    specified the telephone number to which consent to be called was provided;

    c.    clearly authorized the company to call the called party using an automatic telephone dialing system or prerecorded message for telemarketing purposes; and

    d.    was not a condition of purchasing goods or services.

(hereinafter "Prior Express Written Consent") (emphasis added).[5]

---

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FFC Declaratory Ruling") 23 F.C.C.R. 559, 23 FCC Rcd 559, 564-565 (¶10), 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[3] FCC Declaratory Ruling 07-232, 23 FCC Rcd 559 (Jan. 4, 2008).
[4] In Re: Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P & F) 356, 2012 WL 507959 (F.C.C.).
[5] FCC Declaratory Ruling 12-21, FCC Rcd (Feb. 15, 2012).

19. Finally, on September 27, 2016 the FCC released its Consolidated Reporting Act of 2015 wherein it amended section 227(e)(8) of the TCPA to include and equally proscribe "voice service or a text message sent using a text messaging service"[6] without the requisite level of consent.

20. The FCC's Consolidated Reporting Act of 2015 defines text message as "a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number" and includes "a short message service (commonly referred to as 'SMS') message and a multimedia message service (commonly referred to as 'MMS') message." *Id.*

## FACTUAL ALLEGATIONS

21. At all material times herein, Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

22. In or about October 2013, immediately prior to completing a purchase in Defendant's retail store, Plaintiff sent a text message to short-code telephone number 57758 to receive a percentage discount off that specific purchase transaction (hereinafter, "Purchase Text").

23. The immediately-aforementioned text was sent from Plaintiff's cellular telephone number (321) 284-5585 (hereinafter, "Cellular Telephone").

24. Following Plaintiff's Purchase Text sent to Defendant, in response Defendant sent a text message offering a percentage discount (hereinafter, "First Text Message").

25. Defendant sent the First Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

---

[6] Federal Communications Commission Consolidated Reporting Act of 2015, 162 Cong Rec H 5938.

26. Defendant sent the First Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

27. On or about March 15, 2015, Plaintiff received two (2) text messages to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Second Text Message" and "Third Text Message" respectively).

28. The Second Text Message included the text "Hibbett: WIN $1,000 prize! Text PASS to 57758" and included an internet link to terms and conditions and rules. Please see attached a true and correct image of the Second Text Message labeled as Exhibit "A."

29. Defendant sent the Second Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

30. Defendant sent the Second Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

31. The Third Text Message included the text "Hibbett: WIN $1,000 prize! Text PASS to 57758" and included an internet link to terms and conditions and rules. Please see attached a true and correct image of the Third Text Messages labeled as Exhibit "A."

32. Defendant sent the Third Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

33. Defendant sent the Third Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

34. On or about March 23, 2015, Plaintiff received a fourth text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Fourth Text Message").

35. The Fourth Text Message included the text "Hibbett: $15 off a purchase of $75 or more," included an internet link to the coupon, a code to use at the register, an internet link to the

terms and conditions, and the text "Text STOP2STOP". Please see attached a true and correct image of the Fourth Text Message labeled as Exhibit "B."

36. Defendant sent the Fourth Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

37. Defendant sent the Fourth Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

38. On or about April 16, 2015, Plaintiff received a fifth text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Fifth Text Message").

39. The Fifth Text Messages included the text "Enjoy $10 off a purchase of $50 or more," included an internet link to the coupon, a code to use at the register, and an internet link to the terms and conditions. Please see attached a true and correct image of the Fifth Text Message labeled as Exhibit "B."

40. Defendant sent the Fifth Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

41. Defendant sent the Fifth Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

42. On or about April 30, 2015, Plaintiff received a sixth text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Sixth Text Message").

43. The Sixth Text Message included the text "Hibbett: $15 off a purchase of $75 or more," included an internet link to the coupon, a code to use at the register, and an internet link to the terms and conditions. Please see attached a true and correct image of the Sixth Text Message labeled as Exhibit "C."

44. Defendant sent the Sixth Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

45. Defendant sent the Sixth Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

46. On or about July 27, 2015, Plaintiff received a seventh text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Seventh Text Message").

47. The Seventh Text Message included the text "Pack more style! Enjoy $20 off $100 or more," included an internet link to the coupon, a code to use at the register, and an internet link to the terms and conditions. Please see attached a true and correct image of the Seventh Text Message labeled as Exhibit "C."

48. Defendant sent the Seventh Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

49. Defendant sent the Seventh Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

50. On or about August 3, 2015, Plaintiff received an eighth text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Eighth Text Message").

51. The Eighth Text Message included the text "Hibbett: Shop Back To School Styles. Enjoy $15 off $75," included an internet link to the coupon, a code to use at the register, and an internet link to the terms and conditions. Please see attached true and correct image of the Eighth Text Message labeled as Exhibit "D."

52. Defendant sent the Eighth Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

53. Defendant sent the Eighth Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

54. On or about August 17, 2015, Plaintiff received a ninth text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Ninth Text Message").

55. The Ninth Text Message included the text "Hibbett: Enjoy $25 off $75," included a code to use at the register, and an internet link to the terms and conditions. Please see attached a true and correct image of the Ninth Text Message labeled as Exhibit "D."

56. Defendant sent the Ninth Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

57. Defendant sent the Ninth Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

58. On or about September 14, 2015, Plaintiff received a tenth text message to his Cellular Telephone from short-code telephone number 57758 (hereinafter, "Tenth Text Message").

59. The Tenth Text Message included the text "Hibbett: Your treat awaits! Get $15 off $50," included an internet link to the coupon, a code to use at the register, and an internet link to the terms and conditions. Please see attached a true and correct image of the Tenth Text Message labeled as Exhibit "E."

60. Defendant sent the Tenth Text Message to Plaintiff's Cellular Telephone using an automatic telephone dialing system or a predictive telephone dialing system.

61. Defendant sent the Tenth Text Message without possessing Plaintiff's Prior Express Written Consent to do so.

62. At no time in or after October 2013 did Plaintiff provide Defendant his Prior Express Written Consent, as that term is used under the TCPA, to anyone for the purpose of receiving telemarketing and advertising text messages from Defendant.

63. Plaintiff did not ever grant Defendant his Prior Express Written Consent to initiate or place a call or text message using an automatic telephone dialing system to his Cellular Telephone.

64. Upon information and belief, Defendant did not have a system in place to update its customers' prior express consent, allegedly obtained in October 2013, to Prior Express *Written* Consent in or after October 2013, as required by the FCC's February 15, 2012 Report and Order.

65. Defendant did not update or gain Plaintiff's Express Written Consent in or after October 2013 to send text messages using an automatic telephone dialing system.

66. Defendant made or sent *at least* ten (10) telemarketing text messages to Plaintiff's Cellular Telephone, as more specifically described herein, using an automatic telephone dialing system or a predictive telephone dialing system without Plaintiff's Prior Express Written Consent.

67. Under the TCPA, any person who initiates telemarketing calls or texts to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice without the recipient's prior express written consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater. 47 U.S.C. § 227(b)(3)(B).

68. Additionally, under the TCPA, the court may increase the damage award up to three (3) times, up to $1,500.00, for each willful or knowing violation of the TCPA. *Id.* at § 227(b)(3)(C).

69. Florida Statutes, Section 501.207 provides for the award of actual damages and an award of attorneys' fees and costs to Plaintiffs should Plaintiffs prevail in this matter against the Defendants.

70. Plaintiff has retained Leavengood, Dauval, Boyle, & Meyer, P.A., d/b/a LeavenLaw, for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services and reimburse them for costs incurred.

## CLASS ACTION ALLEGATIONS

71. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

72. Plaintiff brings this action individually and on behalf of all other person similarly situated pursuant to Federal Rule of Civil Procedure 23.

73. Plaintiff proposes the following TCPA Class definition, subject to amendment as appropriate:

### TCPA Class

All persons within the United States wherein Defendant made a non-emergency telephone call or text message to a cellular telephone through the use of an automatic telephone dialing system after October 2013 without possessing the called party's prior express written consent to make such a call.

74. Plaintiff proposes the following FDUTPA Class definition, subject to amendment as appropriate:

### FDUTPA Class

All persons within the TCPA Class (i.e., wherein Defendant made or sent a non-emergency telephone call or text message to a cellular telephone through the use of an automatic telephone dialing system after October 2013 through without possessing the called party's

>prior express written consent to make such a call) who received the call or text in the state of Florida where such call or text is an unfair or deceptive trade practice that caused the call or text recipient damage.

Collectively, all these persons in the TCPA Class and its Class Members and the FDUTPA Class and its Class Members will be referred to collectively as "Classes" or "Class Members." Plaintiff represents, and is a member of, the Classes.

75. Excluded from the Classes are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

76. Plaintiff does not know the exact number of Class Members, but Plaintiff reasonably believes Class Members number, at minimum, to be in the thousands, if not tens of thousands of people.

77. Plaintiff and Class Members have been harmed by Defendant's acts.

78. This Class Action Complaint seeks injunctive relief and money damages.

79. The joinder of all Class Members is impracticable due to the size and relatively modest value of each individual claim.

80. Additionally, the disposition of the claims in this class action will provide substantial benefit (i.e., monetary damages) to the Plaintiff and Class Members, as well as to the Court in avoiding a multiplicity and inefficiency of numerous identical suits.

81. The Classes can be identified easily through records maintained by Defendant.

82. There are well-defined, nearly identical, questions of law and fact affecting all parties.

83. There is a well-defined community of interest in the questions of law and fact involving affected Class Members. Among the questions of law and fact which are common to the Classes, and which predominate over questions affecting individual Class Members, are the following:

   a. Whether Defendant used an automatic telephone dialing system or a predictive telephone dialing system in making non-emergency calls or in sending non-emergency texts to Class Members' cellular telephones;

   b. Whether Defendant's calls or texts were made or placed for telemarketing purposes and/or to solicit money in return for goods and/or services;

   c. Whether Defendant's telemarketing calls or texts, made without Plaintiff's and TCPA Class Members' prior express written consent in alleged violation of the TCPA, is an unfair or deceptive trade practice undertaken in violation of FDUTPA;

   d. Whether Plaintiff and FDUTPA Class Members suffered actual damages as a result of Defendant's conduct and whether Defendant's conduct was the cause of such damage;

   e. Whether Defendant's systems had the present capacity to store and sequentially or randomly generate telephone numbers to be called or texted;

   f. Whether Defendant can meet its burden of showing it obtained Prior Express Written Consent prior to making such autodialed or predictive calls or text messages;

   g. Whether Defendant's conduct was knowing and/or willful;

   h. Whether Defendant is liable for statutory damages, and if so, in what amount; and

    i.  Whether Defendant should be enjoined from engaging in such conduct in the future.

84. Plaintiff asserts claims that are typical of each Class Member, as each are persons who received non-emergency text messages or telephone calls from Defendant with an automatic telephone dialing system or a predictive telephone dialing system, without Class Members' Prior Express Written Consent.

85. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

86. Plaintiff has no interests which are antagonistic to the Class or to any Class Member.

87. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA and the FDUTPA.

88. A class action is the superior method for the fair and efficient adjudication of this controversy.

89. Class-wide relief is essential to compel Defendant to comply with the TCPA and the FDUTPA.

90. A Class Member's interest in individually pursuing claims against Defendant is slight because the damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

91. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all systematically and automatically dialed, and the Class Members, by definition, did not provide the Prior Express

Written Consent, as required under the statute, to authorize such telemarketing calls or texts to their cellular telephones.

92. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

93. Moreover, on information and belief, Plaintiff and Class Members allege that the TCPA and FDUTPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT ONE:
## INVASION OF PRIVACY
## NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227 *ET SEQ.*

Plaintiff and TCPA Class Members re-allege paragraphs one (1) through ninety-three (93) as if fully restated herein and further state as follows:

94. Defendant's foregoing acts constitute numerous and multiple violations of the TCPA, including but not limited to, each of the above-cited provisions of 47 United States Code, Section 227 *et seq*.

95. Specifically, Defendant made or sent, or caused to be made or sent, text messages to Plaintiff and the TCPA Class Members using an automatic telephone dialing system or a predictive telephone dialing system, within the meaning of 47 United States Code § 227(a).

96. The equipment used by Defendant had the capacity to store or produce telephone numbers to be called or texted, using random or sequential number generator, and to dial or text such numbers. By using such equipment, Defendant was capable of automatically sending thousands of text messages to the subscribers of cellular telephone numbers without human intervention.

97. The aforementioned text messages were negligently made or sent to Plaintiff and TCPA Class Members without their Prior Express Written Consent.

98. As a result of Defendant's violations of 47 United States code, Section 227 *et seq.*, Plaintiff and TCPA Class Members are entitled to an award of $500.00 in statutory damages for each and every text message made or sent to Plaintiff's and TCPA Class Members' cellular telephones in violation of the statute, pursuant to 47 United States Code, Section 227(b)(3)(B).

99. Plaintiff and TCPA Class Members are also entitled to, and do seek, injunctive relief prohibiting Defendant's violation of the TCPA in the future.

## COUNT TWO:
## INVASION OF PRIVACY
## **WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227 *ET SEQ.***

Plaintiff and TCPA Class Members re-allege paragraphs one (1) through ninety-three (93) as if fully restated herein and further state as follows:

100. Defendant's foregoing acts and omissions constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to, each of the above-cited provisions of 47 United States Code, Section 227 *et seq.*

101. Specifically, Defendant knowingly and/or willingly made or sent, or caused to be made or sent, text messages to Plaintiff and the TCPA Class Members using an automatic telephone dialing system or a predictive telephone dialing system, within the meaning of 47 United States Code § 227(a).

102. The equipment used by Defendant had the capacity to store or produce telephone numbers to be called or texted, using random or sequential number generator, and to dial or text such numbers. By using such equipment, Defendant was capable of automatically sending

thousands of text messages to the subscribers of cellular telephone numbers without human intervention.

103. The aforementioned text messages were knowing or intentionally made or sent to Plaintiff and TCPA Class Members without their Prior Express Written Consent.

104. As a result of Defendant's knowing and/or willful violations of 47 United States code, Section 227 *et seq.*, Plaintiff and Class Members are entitled to treble damages of up to $1,500.00 for each and every text message made or sent to Plaintiff's and Class Members' cellular telephones in violation of the statute, pursuant to 47 United States Code, Section 227(b)(1).

105. Plaintiff and Class Members are also entitled to, and do seek, injunctive relief prohibiting Defendant's violation of the TCPA in the future.

## COUNT THREE:
## DECEPTIVE AND UNFAIR TRADE PRACTICES – VIOLATION OF FLORIDA STATUTE, SECTION 501.201(1)

Plaintiff and FDUTPA Class Members re-allege paragraphs one (1) through ninety-three (93) as if fully restated herein and further state as follows:

106. Defendant is subject to, and violated provisions of, Florida Statutes, Section 501.204(1) by engaging in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

107. Defendant's conduct, namely the making or sending of unlawful text messages to Plaintiff's and FDUTPA Class Members' cellular telephones without their Prior Express Written Consent, caused Plaintiff and FDUTPA Class Members damage, including but not limited to the use of their cellular telephone's capacity and program minutes or texts, diminution of the storage capacity of their cellular telephones as a result of receipt of Defendant's texts, loss of use of their

cellular telephones, charges incurred for the receipt (pro-rata or otherwise) of Defendant's texts messages, and invasion of Plaintiff's and FDUTPA Class Members' privacy.

108. As a result of Defendant's unlawful conduct alleged herein, Plaintiff and FDUTPA Class Members have been actually damaged in an amount to be determined at trial.

109. Plaintiff and FDUTPA Class Members are entitled to attorneys' fees and costs from Defendant as a result of Defendant's conduct undertaken in violation of the FDUTPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant Plaintiff and all Class Members the following relief against Defendant:

a. Judgment against Defendant declaring Defendant violated the TCPA;

b. Judgment providing injunctive relief, prohibiting Defendant from further engaging in conduct that violates the TCPA and FDUTPA;

c. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each TCPA Class Member $500 in statutory damages for each and every text message sent that violated the TCPA;

d. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each TCPA Class Member treble damages, as provided by statute, up to $1,500 for each and every text message sent that violated the TCPA;

e. An award of actual damages against Defendant for its violation of the FDUTPA;

f. An award of attorneys' fees and costs to counsel for Plaintiff and the FDUTPA Class Members;

g. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes the Court deems appropriate, finding that

Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firm representing Plaintiff as counsel for the Classes;

  h. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff and Class Members hereby give notice to Defendant and demand that Defendant and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

         Respectfully submitted,

         **LEAVENLAW**

         */s/ Ian R. Leavengood*
         [X] **Ian R. Leavengood, Esq., FBN 0010167**
         ☐ **Aaron M. Swift, Esq., FBN 0093088**
         ☐ **Gregory H. Lercher, Esq. FBN 0106991**
         Northeast Professional Center
         3900 First Street North, Suite 100
         St. Petersburg, FL 33703
         Phone: (727) 327-3328
         Fax: (727) 327-3305
         consumerservice@leavenlaw.com
         aswift@leavenlaw.com
         glercher@leavenlaw.com
         *Attorneys for Plaintiff & Class Members*